1
2
3
4
5

Carolyn Hunt Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

6

*Attorneys for Plaintiff and the*
*Putative Class and Collective*

7

8

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15

ANGEL VILLAFAN, individually and on
behalf of all others similarly situated,

     Plaintiff,

vs.

ONPOINT INDUSTRIAL SERVICES,
LLC,

     Defendant.

Case No. 3:24-cv-8895

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT**

**(1) Violations of the Fair Labor Standards**
    **Act (29 U.S.C. §§ 201, *et seq.*)**

**(2) Failure to Pay for All Hours Worked (Cal.**
    **Lab. Code § 204);**

**(3) Failure to Pay Minimum Wage and**
    **Liquidated Damages (Cal. Lab. Code §§**
    **1182.11, 1182.12, 1194,1197, and 1197.1)**

**(4) Failure to Pay Overtime Wages (Cal. Lab.**
    **Code § 510);**

**(5) Failure to Authorize and Permit and/or**
    **Make Available Meal and Rest Periods (Cal.**
    **Lab. Code §§ 226.7 and 512);**

**(6) Failure to Reimburse for Necessary Business**
    **Expenditures (Cal. Lab. Code § 2802);**

**(7) Failure to Provide Timely and Accurate**
    **Itemized Wage Statements (Cal. Lab. Code §**
    **226);**

**(8) Waiting Time Penalties (Cal. Lab. Code §§**
    **201-203); and**

**(9) Unlawful Business Practices (Cal. Bus. &**
    **Prof. Code §§ 17200, *et seq.*).**

16
17
18
19
20
21
22
23
24
25
26

**DEMAND FOR JURY TRIAL**

27
28

1

**CLASS AND COLLECTIVE ACTION COMPLAINT**

2

    Plaintiff Angel Villafan, on behalf of herself and all others similarly situated ("Plaintiff"),

3

complains and alleges as follows:

4

**INTRODUCTION**

5

    1.    Plaintiff brings this class and collective action on behalf of herself and other similarly

6

situated individuals who have worked for OnPoint Industrial Services, LLC ("OnPoint" or

7

"Defendant") as non-exempt, hourly employees, including but not limited to Laborers or Safety

8

Attendants and Foremen, to challenge OnPoint's violations of the Fair Labor Standards Act, 29

9

U.S.C. §§ 201, *et seq*. ("FLSA") and California wage and hour laws.

10

    2.    This is a class action against OnPoint to challenge its policies and practices of: (1)

11

failing to compensate Plaintiff and putative Class and Collective members for all hours worked; (2)

12

failing to pay Plaintiff and putative Class and Collective members minimum wage for all hours

13

worked; (3) failing to pay Plaintiff and putative Class and Collective members overtime and double

14

time wages; (4) failing to authorize and permit Plaintiff and the putative Class members to take meal

15

and rest breaks to which they are entitled by law and pay premium compensation for missed breaks;

16

(5) failing to reimburse Plaintiff and putative Class and Collective members for necessary business

17

expenditures; (6) failing to provide Plaintiff and putative Class members accurate itemized wage

18

statements; (7) failing to timely pay Plaintiff and putative Class members wages upon the

19

termination of employment; (8) waiting time penalties; and (9) unlawful business practices.

20

    3.    OnPoint partners with various companies to offer project planning and coordination,

21

transportation and logistics, materials management, and confined space technology, including

22

engineered ventilation and remote monitoring. Plaintiff and members of the putative Class and

23

Collective are current and former employees who worked for OnPoint as non-exempt hourly

24

employees throughout the United States, including in California. These employees provide support

25

for OnPoint's partners by removing waste material and the overall upkeep of designated areas.

26

Among other tasks, Plaintiff and putative Class and Collective members are responsible for proper

27

cleaning, and the safe handling of disposal of waste, and adherence to safety protocols.

28

    4.    Plaintiff and putative Class and Collective members work long hours. For example,

Plaintiff is regularly scheduled to work, and in fact works, twelve (12) hour shifts for seven (7) or more consecutive days. Beyond the scheduled hours for which Plaintiff and putative Class and Collective members are scheduled to work, Plaintiff and putative Class and Collective members are also required to work before and after scheduled shifts, without compensation.

5.      Defendant hires and assigns Plaintiff and putative Class and Collective members to work at specific facilities for periods of up to several months. Before putative Class and Collective members may report to an assigned work site, OnPoint requires Plaintiff and putative Class and Collective members to attend training, complete certifications, complete drug testing, complete fit testing to ensure their safety equipment fit properly, and obtain their badges, at different locations as arranged by OnPoint.  Plaintiff and putative Class and Collective members are only compensated for four hours of work, instead of for all their time spent in these pre-assignment trainings, certifications, and examinations, which can take anywhere between six hours and two days to complete. Nor are Plaintiff and putative Class and Collective members compensated for their time traveling to and from these sites.

6.      Following pre-assignment training, certifications, examinations, and obtaining their badges, Plaintiffs and putative Class and Collective members travel to work locations at the designated facility, often far from home and out of state, without adequate reimbursement.

7.      Once Plaintiff and putative Class and Collective members report to and begin their work assignments, Plaintiff and putative Class and Collective members are not paid minimum wage for all hours worked, overtime rates or double time rates, as appropriate, for all hours worked above eight per day and forty per week. Despite their long shifts, Plaintiff and putative Class and Collective members are also routinely denied meal and rest periods.

8.      Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they actually work and the amount of wages and overtime to which they are entitled and for which they should be compensated.  Nor are Plaintiff and putative Class and Collective members paid all amounts owed following voluntary or involuntary termination of employment.

9.      Plaintiff and putative Class and Collective members must also pay work expenses out

of pocket, without adequate reimbursement. For example, Plaintiff and the putative Class and Collective are not reimbursed for tools and protective gear necessary for work, including but not limited to: steel-toed boots, fire-resistant Nomex pants, coveralls, and/or heavy-duty jackets; rain jackets; backpacks; airhorns; H2S gas monitors; batteries for radios; safety glasses or goggles; and safety vests, to safely complete their jobs. Although Plaintiff and putative Class and Collective members receive often ill-fitting, poor quality safety goggles or glasses, gloves, fire-resistant Nomex protective wear, radios, H2S gas monitors, and other items, Defendant only provides one of each such items to each employee and deducts the cost of such items if they are lost, stolen, or broken, from Plaintiff and putative Class and Collective members' pay. Further, although Plaintiff and putative Class and Collective members may receive a per diem to mitigate the cost of lodging and other work-related expenses when working at facility sites far from home, the amount allocated is regularly insufficient to cover all these expenses.

10. As a result of these violations, Plaintiff seeks full compensation on behalf of herself and all others similarly situated for all damages, penalties, and interest to the full extent permitted by the FLSA, the California Labor Code, and Industrial Welfare Commission ("IWC") Wage Orders.

11. Plaintiff seeks full compensation on behalf of herself and all others similarly situated for all unpaid wages, including overtime and double time, all denied meal and rest periods, unreimbursed business expenses, inaccurate wage statement penalties, and waiting time penalties.

12. OnPoint is also liable for various other penalties under the Cal. Lab. Code, and for violation the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL").

13. Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution.

14. Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA, the Cal. Lab. Code, and Cal. Code Civ. Proc. § 1021.5.

## **PARTIES**

15. Plaintiff and the putative Class and Collective members are current and former hourly, non-exempt employees who work for OnPoint Industrial Services, LLC as Laborers or Safety Attendants and Foremen, among other similarly situated positions, throughout the United States

1    including in California.

2        16.    Plaintiff is an individual over the age of eighteen, and at all times mentioned in this

3    Complaint was a resident of the State of California.

4        17.    Plaintiff has been employed by OnPoint for various projects as a Laborer or Safety

5    Attendant and Foreman since approximately 2009 to the present. After each assigned project,

6    Plaintiff, like other putative Class and Collective members, is terminated after each project, then

7    rehired for subsequent projects. Plaintiff has worked for OnPoint in, among other places, California,

8    Louisiana, Minnesota, and Washington.

9        18.    Plaintiff is informed, believes, and alleges that OnPoint provides skilled safety

10    personnel to clients operating oil refineries. OnPoint provides services to clients with oil refineries

11    throughout California and throughout the United States. Plaintiff is further informed, believes, and

12    thereon alleges that OnPoint employs hourly, non-exempt employees throughout the United States,

13    including in California.

14        19.    At all relevant times, OnPoint has done business under the laws of the United States,

15    including California, including in this judicial district, and has employed Class and Collective

16    members in this judicial district. At all relevant times, OnPoint has been Plaintiff's "employer"

17    within the meaning of the FLSA and California law.

18                        **JURISDICTION AND VENUE**

19        20.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §

20    1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

21    U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

22        21.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. A substantial

23    part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

24                        **FACTUAL ALLEGATIONS**

25        22.    OnPoint Industrial Services LLC provides services include turnaround management,

26    materials management, workforce transportation, and safety and logistics. It also offers training and

27    consulting services for planning, organizing, controlling, and executing industrial projects. OnPoint

28    provides services throughout the United States, including in California.

23. To conduct its operations, OnPoint maintains a corporate structure in which there are various groups that handle specific subsets of tasks within the company. The groups and departments are largely staffed by hourly, non-exempt employees that handle a variety of tasks. This operation structure is uniform and standardized throughout OnPoint's operations. The employment conditions for the non-exempt, hourly employees are substantially similar, if not identical, at OnPoint work locations throughout United States, including in California.

24. Plaintiff works for OnPoint as a Laborer since approximately 2009, and last worked on projects for OnPoint in California in 2024.[1] Plaintiff's primary duties include, but are not limited to: monitoring and recording air pressure to ensure that oxygen levels are safe for other workers at the drilling site; cleaning and organizing the drilling site; monitoring and recording the amount of employees entering and exiting the work site; and supervising hot work to prevent combustion near drilling sites.

25. Plaintiff is classified as an hourly, non-exempt employee and is paid an hourly rate for her services. Plaintiff works at various work sites operated by clients of OnPoint in California as well as throughout the United States, including but not limited to Louisiana, Minnesota, and Washington.

26. OnPoint dispatches Class members to various client locations throughout the United States, including in California. For each assignment, OnPoint determines the hourly rate to be paid and the duration of the project.

27. Plaintiff and Class and Collective members are typically scheduled to work twelve (12) hour shifts for thirteen (13) consecutive days, followed by one (1) day off, and then another thirteen (13) consecutive days of ten (10) or twelve (12) hour shifts. Additionally, because OnPoint expects employees to stay on-site until the job is complete, Plaintiff and putative Class and Collective members regularly work seven or more consecutive days. Despite this demanding work schedule, Plaintiff and putative Class and Collective members are often denied compensation for all hours worked, including overtime for work in excess of eight (8) hours per day and forty (40) hours

---

[1] Plaintiff anticipates being hired for further assignments from OnPoint. For ease of reading, allegations are presented in the present tense for Plaintiff.

per week. Plaintiff and putative Class and Collective members are also routinely denied double time for work over twelve hours in one day and over eight hours on the seventh consecutive day of work.

28. Class and Collective members generally work one of two twelve (12) hour shifts in a twenty-four (24) hour period. For example, one group of Class and Collective members may be scheduled to work from 7:00 a.m. to 7:00 p.m., and another group of Class members is scheduled to work from 7:00 p.m. to 7:00 a.m. But, regardless of which shift Class members work, the job duties and responsibilities are the same, as is the process for reporting to work, beginning the workday, taking meal and rest breaks, and ending the workday.

29. OnPoint requires Plaintiff and putative Class and Collective members to perform substantial work off-the-clock and without compensation. Plaintiff, Collective, and Class members are required to traverse on foot approximately two (2) miles to a security gate prior to clocking in. At the security gate, Class and Collective members are required to wait in line to pass through security, where they swipe a badge that confirms their right to access to the facility and electronically documents the time in which they passed through security. After these off-the-clock security checks, Plaintiff, Collective, and Class members must get in line to check out required daily personal protection equipment.

30. OnPoint requires that Plaintiff and putative Class and Collective members use personal protection equipment. OnPoint instructs Class and Collective members to clock in only after they have donned personal protection equipment and gather their tools, which takes up to thirty minutes. This protective gear uniformly includes fire-retardant coveralls or fire-retardant jacket and pants, steel-toe boots, hard hat, safety glasses, and gloves. Once employees have donned personal protection equipment, they are required to walk to lunchroom tent to sign the sign in sheet, after which they proceed to walk to their assigned workstations, or to attend a safety or tailgate meeting to discuss work prior to moving to their assigned workstations.

31. These tasks are completed off-the-clock and OnPoint pays employees based on their shifts' scheduled start and end times. Any work completed before or after their scheduled start time is unpaid. Indeed, Plaintiff and Class and Collective members are required to write down their scheduled start and end times, regardless of what time it actually is when they arrive or leave at their

1   sign in sheets, and if they do not, their entries may be modified to reflect their scheduled start or

2   end times.

3          32.    Class and Collective members report that to comply with Defendant's scheduling and

4   pre-shift activity requirements, they must pass through the security gate at least thirty minutes before

5   their scheduled start times.

6          33.    Similarly, OnPoint requires Plaintiff and Class and Collective Members to clock out

7   before taking off their personal protection equipment and storing their tools and equipment at the

8   end of their shifts, and observe the same pre-shift tasks they complete at the end of their shifts, after

9   they have clocked out. As a result of these policies, Plaintiff and the putative Class and Collective

10  members are not adequately compensated for all hours worked at their regular rate or at the

11  applicable overtime rates.

12         34.    As stated above, once Class and Collective members swipe in to access the facility,

13  they are required to walk to another location at the facility which typically has a lunch tent or trailer,

14  as well as a supervisor's trailer. Once at this location, Class and Collective members drop off their

15  lunches, obtain and begin to fill out paperwork relating to their workday, gather equipment, and

16  receive their job assignments for the day. Often, the equipment Class and Collective members need

17  for the day is not at that particular location, and they will have to walk to a different part of the

18  facility to obtain the necessary equipment.  Following these pre-shift activities, Class and Collective

19  members walk to another part of the facility, to their assigned workstation.  Despite all of this pre-

20  shift activity, employees are required to arrive at their assigned workstation by their scheduled start

21  time, and are only compensated, for time worked *after* they arrive at their assigned workstation.  At

22  some point during the day (but not necessarily when Class and Collective members first report to

23  their supervisors for the day), their supervisors document **a** start time on employee time sheets –

24  either by writing down that start time themselves, or by directing Class and Collective members to

25  write down a specific start time, regardless of what time employees *in fact* began working, and

26  indeed, regardless of what time it actually is when the start time is created. Instead, Class and

27  Collective members are instructed to write down their scheduled start time, which does not account

28  of any of the above-described pre-shift activity, but denotes the time at which employees were

scheduled to start working and expected to be at their post performing their assigned safety duties. As a result of these policies, Plaintiff and the putative Class and Collective members are not adequately compensated for all hours worked at their regular rate or at the applicable overtime rates.

35.    OnPoint requires Plaintiff, Class and Collective members to travel to and attend pre-assignment activities in order to begin work as Laborers for OnPoint.  OnPoint arranges for and requires its Laborers to undergo mandatory training, certifications, and physical examinations. OnPoint requires Plaintiff and putative Class and Collective members to attend training, complete certifications, complete drug testing, complete fit testing to ensure their safety equipment would fit properly, and obtain their badges, at different locations as arranged by OnPoint. These pre-assignment trainings provide information on specific OnPoint policies and procedures and typically take one to two days of eight hour sessions. Class and Collective members are also required to regularly update their annual certifications for the various safety duties they perform for OnPoint. OnPoint also requires Laborers to complete annual physical examinations at a location arranged by OnPoint, taking approximately one to five hours a year.  Plaintiff and putative Class and Collective members only compensated for four hours of work, and are not compensated for all their time spent in these pre-assignment trainings, certifications, and examinations, which can take anywhere between six hours and two days to complete. Nor are Plaintiff and putative Class and Collective members compensated for their time traveling to and from these sites. As a matter of policy, only up to four hours of this time spent on training, certifications, or physical examinations is compensated, nor are Class and Collective members reimbursed for any expenses relating to these mandatory pre-assignment activities.

36.    OnPoint also requires Plaintiff and putative Class and Collective members to complete additional training at the facility locations during assignments. In particular, the Plaintiff was required to complete these additional trainings every time she worked at a different facility, approximately two (2) to three (3) times per year. The Plaintiff would spend approximately eight (8) hours at each of these required additional trainings. This time is not compensated.

37.    OnPoint does not require employees to clock out for lunch breaks. Instead, OnPoint attributes thirty minutes per workday for an unpaid meal period, even when work is too demanding

to allow Plaintiff to take a full, legally compliant thirty-minute meal period. OnPoint management enters meal period times on employee sign-in sheets even though OnPoint employees regularly work through their scheduled meal periods. When Plaintiff, Collective, and Class members do take their scheduled lunches, they are cut short due to the distance between assigned work posts and interruptions by OnPoint management. Putative Class members, including Plaintiff, are also not provided with premium pay for these missed meal breaks.

38.    When Plaintiff and putative Class members work more than ten hours per day, a second full, legally compliant meal period is not made available to them.  Putative Class members, including Plaintiff, are not provided with premium pay for these missed meal breaks.

39.    When Plaintiff and putative Class and Collective members receive a meal break, these meal breaks are often less than thirty minutes. For example, OnPoint often includes the time it takes to travel from the facility worksite to the lunch location when allocating a thirty minute break to its employees.  The time traveling to and from the lunch location can be up to fifteen minutes. OnPoint includes this time as part of the lunch break, despite the fact that employees are not relieved of their work obligations until they have arrived at the lunch location. Furthermore, even when Plaintiff and putative Class and Collective members are provided with a thirty-minute lunch break, supervisors often interrupt these meal breaks to discuss work-related topics.  Plaintiff, Collective, and Class members are required to keep their assigned radio with them, during their off-duty meal periods. OnPoint management will routinely contact them to provide additional assignments or to ask them to return to their post before the conclusion of their meal period, and expects Plaintiff and putative Class and Collective members to respond when requested, even during meal and rest breaks. If an employee does not have their radio on or with them, OnPoint management will contact them on their personal cell phone. Putative Class members, including Plaintiff, are not provided with premium pay for these non-compliant meal breaks.

40.    Moreover, the pace of the work is too demanding to allow Plaintiff and putative Class members to take full, timely, legally compliant rest breaks.  OnPoint will cut Plaintiff and putative Class members rest breaks short due to lack of unavailable staff to properly relieve them of their duties. Even when Plaintiff and putative Class members are provided with a rest break, supervisors

often interrupt these breaks. Further, if the Plaintiff, Collective, and Class members are able to take a ten (10) minute rest period, OnPoint counts the time leaving/coming from their job-post, including tower posts, as part of their rest period. Putative Class members, including Plaintiff, are not provided with premium pay for missed rest breaks.

41.     Defendant is aware that non-exempt, hourly employees do not receive timely and compliant meal and rest periods to which they are entitled and that it has, and continues, to deprive its hourly, non-exempt employees of compensation for all time worked. As a result of OnPoint's policies, Plaintiff and putative Class and Collective members are denied minimum wage for all hours worked.

42.     OnPoint also routinely denies reimbursement for work-related expenses to Class members, including Plaintiff. OnPoint requires putative Class members, including Plaintiff, to pay for other necessary work-related expenses. For example, Plaintiff and putative Class members are expected to provide some of their own personal protection equipment, including but not limited to fire retardant pants, jackets, coveralls, and gloves, boots, and glasses when working on drilling platforms.  In particular, the Plaintiff estimates spending hundreds of dollars or more a year on required safety gear to complete her duties while employed by OnPoint. Plaintiff and putative Class members must also pay out-of-pocket expenses to wash personal protection equipment between shifts.

43.     OnPoint also does not provide putative Class members, including Plaintiff, accurate itemized wage statements as required by California law.  The wage statements that they are provided are not accurate because they do not reflect the actual hours worked by Plaintiff and putative Class members. The wage statements do not contain off-the-clock work and contain a reduction of pay for meal periods that are not taken.  Further, the wage statements are inaccurate because they do not include minimum wage for all hours worked, premium pay for missed breaks, overtime, and double time for all hours worked.

44.     OnPoint does not provide putative Class members with full payment of all wages owed at the end of employment. As these workers are owed for off-the-clock work, unpaid overtime, and premium pay when their employment ends, and these amounts remain unpaid under OnPoint's

policies and practices, OnPoint fails to pay all wages due upon termination, and further fails to provide final pay within a timely manner, and at times, well over 72 hours of separation of employment. As a consequence, OnPoint is subject to waiting time penalties.

45.    Plaintiff worked at several drilling sites in California, and throughout the United States, including but not limited to in Louisiana, Minnesota, and her experience with regards to hours worked, off-the-clock work, meal and rest breaks, and unreimbursed business expenses was substantially the same in each instance.

46.    Plaintiff is informed, believes, and thereon alleges that OnPoint's policies and practices have at all relevant times been substantially the same for non-exempt, hourly employees, regardless of the location within the United States, including in California.

47.    OnPoint's unlawful conduct has been widespread, repeated, and consistent throughout its work locations in the United States, including in California.  OnPoint knew or should have known that its policies and practices have been unlawful and unfair.

48.    OnPoint's conduct was willful, carried out in bad faith, and caused significant damages to non-exempt hourly employees in an amount to be determined at trial.

## COLLECTIVE ALLEGATIONS UNDER THE FLSA

49.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

50.    Plaintiff brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) as to claims for failing to pay Plaintiff and Collective members for all hours worked, including minimum wage, wages at the agreed rate, and overtime compensation for all hours worked over forty (40) hours per week, liquidated damages, and attorneys' fees and costs under the FLSA. The FLSA Collective that Plaintiff seeks to represent is defined as follows:

> All current and former hourly, non-exempt employees of OnPoint Industrial Services LLC, in the United States during the time period three years prior to the filing of this Complaint until the resolution of this action.

51.    Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA because Plaintiff's FLSA claims are similar to the claims of the Collective members.

52.    The Collective members are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that required them to perform work without compensation and required them to perform overtime work at an unlawfully reduced payment rate, in violation of the FLSA.

53.    Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

54.    Plaintiff will fairly and adequately represent and protect the interests of Collective members.  Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

55.    The similarly situated Collective members are known to OnPoint, are readily identifiable, and may be located through OnPoint's records. These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## RULE 23 CLASS ACTION ALLEGATIONS

56.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

57.    Plaintiff brings this case as a class action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23. The putative California Class that Plaintiff seeks to represent is defined as follows:

> All current and former hourly, non-exempt employees of OnPoint Industrial Services LLC, in California during the time period four years prior to the filing of this Complaint until the resolution of this action.

58.    This action has been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the putative class is easily ascertainable.

a.    **Numerosity**: The potential members of the putative Class as defined are so numerous that joinder of all the members of the putative Class is impracticable.

b.    **Commonality**: There are questions of law and fact common to Plaintiff and the putative

Class that predominate over any questions affecting only individual members of the putative Class. These common questions of law and fact include, but are not limited to:

    i.   Whether Defendant fails to compensate putative Class members for all hours worked, including at minimum wage and as overtime compensation, in violation of the Cal. Lab. Code and Wage Orders;

    ii.   Whether Defendant has a policy and/or practice of requiring putative Class members to be in the control of, spend time primarily for the benefit of, and work for Defendant off-the-clock and without compensation;

    iii.   Whether Defendant fails to pay putative Class members minimum wage for all hours worked, in violation of the Cal. Lab. Code and Wage Orders;

    iv.   Whether Defendant fails to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative Class members in violation of the Cal. Lab. Code and Wage Orders;

    v.   Whether Defendant fails to authorize and permit, make available, and/or provide putative Class members with timely meal and rest periods to which they are entitled in violation of the Cal. Lab. Code and Wage Orders;

    vi.   Whether Defendant fails to reimburse Class members for reasonable and necessary business expenses in violation of the Cal. Lab. Code;

    vii.   Whether Defendant fails to provide putative Class members with timely, accurate itemized wage statements in violation of the Cal. Lab. Code and Wage Orders;

    viii.   Whether Defendant fails to timely pay putative Class members for all wages owed upon termination of employment in violation of the Cal. Lab. Code;

    ix.   Whether Defendant violates the Cal. Bus. & Prof. Code §§ 17200, *et seq*., by:

        a.   failing to compensate putative Class members for all hours

13

worked, including at minimum wage and as overtime compensation;

b.  failing to pay putative Class members minimum wage for all hours worked;

c.  failing to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative Class members;

d.  failing to authorize and permit, make available, and/or provide putative Class members with timely meal and rest periods to which they are entitled;

e.  failing to reimburse Class members for reasonable and necessary business expenses;

f.  failing to provide putative Class members with timely, accurate itemized wage; and

g.  failing to timely pay putative Class members for all wages owed upon termination of employment; and

x.  The proper formula for calculating restitution, damages, and penalties owed to Plaintiff and the Class as alleged herein.

c.  **Typicality**: Plaintiff's claims are typical of the claims of the Class.  Defendant's common course of conduct in violation of law as alleged herein has caused Plaintiff and putative Class members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class.

d.  **Adequacy of Representation**: Plaintiff is a member of the Class, does not have any conflicts of interest with other putative Class members, and will prosecute the case vigorously on behalf of the Class. Counsel representing Plaintiff is competent and experienced in litigating large employment class actions, including wage and hour classes. Plaintiff will fairly and adequately represent and protect the interests of the Class members.

e.  **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all putative Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each putative Class member has been damaged and is entitled to recovery by reason of Defendant's illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, and, in turn, would establish incompatible standards of conduct for Defendant.

## <u>FIRST CAUSE OF ACTION</u>

### Violation of the Fair Labor Standards Act

### 29 U.S.C. §§ 201, *et seq.*

### (On Behalf of the Collective)

59.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

60.    The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week. 29 U.S.C. § 207(a)(1).

61.    At all times material herein, Plaintiff and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

62.    Defendant is a covered employer required to comply with the FLSA's mandates.

63.    Defendant has violated the FLSA with respect to Plaintiff and the Collective by, *inter alia,* failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage.

64.    Defendant has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the Collective. 29 U.S.C. § 211(c).

65.    Plaintiff and the Collective are victims of a uniform and company-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to current and former non-exempt, hourly employees of Defendant, working throughout the United States.

66.    Plaintiff and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Defendant has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

67.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

68.    As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendant from Plaintiff and the Collective.  Accordingly, Defendant is liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

69.    Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

## SECOND CAUSE OF ACTION

**Failure to Pay for All Hours Worked Pursuant to Cal. Lab. Code § 204**

**(On Behalf of the California Class)**

70.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

71.    Cal. Lab. Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

72.    Cal. Lab. Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72)

hours of an employee's voluntary termination of employment.

73. Cal. Lab. Code § 204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

74. Cal. Lab. Code §§ 221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

75. Cal. Lab. Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

76. Cal. Lab. Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

77. IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

78. OnPoint willfully engaged in and continues to engage in a policy and practice of not compensating Plaintiff and putative Class members for all hours worked or spent in its control.

79. OnPoint regularly schedules Plaintiff and the putative Class members to work twelve hours shifts. However, OnPoint intentionally and willfully requires Plaintiff and the putative Class members to complete additional work off-the-clock, in excess of twelve (12) hours per day. For example, OnPoint instructs Class Members to clock in only after they donned the required personal protection equipment and to clock out before taking off their personal protection equipment. For example, OnPoint requires the Plaintiff and Class members to wait for security check-in while off-the-clock. Despite having their badge scanned at the security gate, Plaintiff and Class members are required to wait in line, check out and don PPE gear off-the-clock. Plaintiff and Class members are then required to walk ten (10) to fifteen (15) minutes to the lunch tent to sign OnPoint's sign-in sheet. OnPoint does not compensate Plaintiff and Class members for this time. As a result, OnPoint fails to pay Plaintiff and the putative Class members for all hours worked and fails to track their

1    actual hours worked.

2        80.    OnPoint requires Plaintiff and the Class to work off-the-clock without compensation.

3    In other words, Plaintiff and the Class are forced to perform work for the benefit of Defendant

4    without compensation.

5        81.    In violation of California law, OnPoint knowingly and willfully refuses to perform its

6    obligations to provide Plaintiff and the putative Class with compensation for all time worked.

7    OnPoint regularly fails to track the time Plaintiff and the putative Class actually work or to

8    compensate them for hours worked.  Therefore, OnPoint committed, and continues to commit, the

9    acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff and the

10   putative Class members' rights.  Plaintiff and the putative Class are thus entitled to recover nominal,

11   actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

12       82.    As a proximate result of the aforementioned violations, Plaintiff and the putative

13   Class have been damaged in an amount according to proof at time of trial.

14       83.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

15                            **<u>THIRD CAUSE OF ACTION</u>**

16                          **Failure to Pay Minimum Wages**

17       **Pursuant to Cal. Lab. Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1**

18                          **(On Behalf of the California Class)**

19       84.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth

20   herein.

21       85.    During the applicable statutory period, Cal. Lab. Code §§ 1182.12 and 1197, and the

22   Minimum Wage Order were in full force and effect and required that OnPoint's hourly employees

23   receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece

24   rate, or any other bases, at the rate of sixteen dollars ($16.00) per hour commencing January 1, 2024.

25       86.    Cal. Lab. Code §1194 states:

26   Notwithstanding any agreement to work for a lesser wage, any employee receiving
     less than the legal minimum wage or the legal overtime compensation applicable to
27   the employee is entitled to recover in a civil action the unpaid balance of the full
     amount of this minimum wage or overtime compensation, including interest thereon,
28   reasonable attorney's fees, and costs of suit.

87. IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

88. Cal. Lab. Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

89. OnPoint has maintained policies and procedures which creates a working environment where hourly employees are routinely compensated at a rate that is less than the statutory minimum wage. Plaintiffs and members of the putative California Class frequently work time off-the-clock before and after their scheduled shifts and go uncompensated for this time donning and doffing safety equipment.

90. As a direct and proximate result of the unlawful acts and/or omissions of OnPoint, Plaintiff and putative California Class members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Cal. Lab. Code §§ 1194, 1194.2 and 1197.1.

### FOURTH CAUSE OF ACTION

**Failure to Pay Overtime Wages**

**Pursuant to Labor Code § 510**

**(On Behalf of the California Class)**

91. Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

92. OnPoint does not compensate Plaintiff and putative California Class members with the appropriate overtime rate, including time and a half and double time, as required by California law. For example, OnPoint does not consider per diem payments when determining what the overtime and double time rates should be for Plaintiff and putative California Class members.

93. Cal. Lab. Code § 510 provides as follows:

19

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

94.    The IWC Wage Order 16-2001(3)(A)(1) states:

The following overtime provisions are applicable … employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: . . . One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and … [d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

95.    Cal. Lab. Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

96.    Cal. Lab. Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation." All such wages are subject to California's overtime requirements, including those set forth above.

97.    OnPoint regularly requires Plaintiff and putative California Class members to work in excess of eight (8) hours per day and forty (40) hours per week, but does not compensate them at an overtime rate for this work. Furthermore, OnPoint regularly does not compensate Plaintiff and the putative California Class members at a double time rate for hours worked in excess of twelve (12) hours each day or after eight (8) hours on the seventh consecutive day of work.

98.    Plaintiff and putative California Class members have worked overtime hours for OnPoint without being paid overtime premiums in violation of the Cal. Lab. Code, applicable IWC Wage Orders, and other applicable law.

99. OnPoint has knowingly and willfully refused to perform its obligation to compensate Plaintiff and the putative California Class members for all premium wages for overtime work. As a proximate result of the aforementioned violations, OnPoint has damaged Plaintiff and the putative California Class members in amounts to be determined according to proof at time of trial.

100. OnPoint is liable to Plaintiff and the California Class alleged herein for the unpaid overtime and civil penalties, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

101. Wherefore, Plaintiff and the California Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION

**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**

**Pursuant to Cal. Lab. Code §§ 226.7 and 512**

**(On Behalf of the California Class)**

102. Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

103. OnPoint routinely does not make meal periods available to Plaintiff and putative California Class members. Despite long workdays regularly lasting in excess of twelve (12) hours, Plaintiff and putative California Class members are often unable to take a meal break, are often prevented from timely taking a meal break, and are frequently interrupted during their meal breaks. When Plaintiff and putative California Class members work more than ten (10) hours in a day, OnPoint often does not make a second meal period available to them. Furthermore, Plaintiff and putative Class members are not paid one hour of premium pay for the missed breaks.

104. Similar to meal periods, OnPoint regularly fails to make rest periods available to Plaintiff and putative California Class members. Plaintiff's and putative California Class members' schedules regularly prevent them from taking rest periods throughout the day. When available, if ever, they are often not compliant. Instead, they are generally untimely or short. Plaintiff and putative California Class members do not receive premium pay for their missed breaks as required by California law.

105. Cal. Lab. Code §§ 226.7 and 512 and the applicable Wage Orders require Defendant

21

to authorize and permit meal and rest periods to its employees. Cal. Lab. Code §§ 226.7 and 512 and the Wage Orders prohibit employers from employing an employee for more than five (5) hours without a meal period of not less than thirty (30) minutes, and from employing an employee more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty (30) minutes. Cal. Lab. Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten (10) minutes of net rest time per four (4) hours or major fraction thereof of work, and to pay employees their full wages during those rest periods. Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

106.    Under Cal. Lab. Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted.  Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

107.    Despite these requirements, OnPoint has knowingly and willfully refused to perform its obligations to authorize and permit and/or make available to Plaintiff and the California Class the ability to take the off-duty meal and rest periods to which they are entitled.  OnPoint has also failed to pay Plaintiff and the California Class one hour of pay for each off-duty meal and/or rest periods that they are denied.  OnPoint's conduct described herein violates Cal. Lab. Code §§ 226.7 and 512.  Therefore, pursuant to Cal. Lab. Code § 226.7(b), Plaintiff and the putative California Class are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

108.    As a proximate result of the aforementioned violations, Plaintiff and the putative California Class have been damaged in an amount according to proof at time of trial.

109.    Wherefore, Plaintiff and the putative California Class request relief as hereinafter provided.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Villafan v. OnPoint Industrial Services LLC*

## SIXTH CAUSE OF ACTION

**Failure to Reimburse for Necessary Business Expenditures**

**Pursuant to Cal. Lab. Code § 2802**

**(On Behalf of the California Class)**

110.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

111.    OnPoint does not reimburse Plaintiff and putative California Class members for necessary business expenditures.

112.    Cal. Lab. Code § 2802 provides, in relevant part:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

113.    OnPoint regularly requires Plaintiff and putative California Class members to pay out-of-pocket expenses for transportation, lodging, and food when traveling to assigned work sites and required trainings.

114.    Furthermore, OnPoint regularly requires Plaintiff and putative California Class members to pay out-of-pocket expenses for required personal protective equipment, including but not limited to boots, fire-proof clothing, gloves, jackets and for the cost of washing this equipment. OnPoint does not reimburse Plaintiff and the putative California Class members for these expenditures.

115.    OnPoint is liable to Plaintiff and the putative California Class members for the unreimbursed expenses and civil penalties, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

116.    Wherefore, Plaintiff and the putative California Class request relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION

### Failure to Provide Accurate Itemized Wage Statements

### Pursuant to Cal. Lab. Code § 226

### (On Behalf of the California Class)

117.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

118.    OnPoint does not provide Plaintiff and putative California Class members with accurate itemized wage statements as required by California law.

119.    Cal. Lab. Code § 226(a) provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

120.    The IWC Wage Orders also establishes this requirement. (*See* IWC Wage Order 16-2001(6)).

121.    Cal. Lab. Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

122.    OnPoint does not provide timely, accurate itemized wage statements to Plaintiff and putative California Class members in accordance with Cal. Lab. Code § 226(a) and the IWC Wage

24

Orders. The wage statements OnPoint provides its employees, including Plaintiff and putative California Class members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.

123.    OnPoint is liable to Plaintiff and the putative California Class alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Cal. Lab. Code § 226(e).

124.    Wherefore, Plaintiff and the putative California Class request relief as hereinafter provided.

### EIGHTH CAUSE OF ACTION

**Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.***

**(On Behalf of the California Class)**

125.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

126.    The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

127.    Cal. Bus. & Prof. Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

128.    Cal. Lab. Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

129.    Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to the filing of this suit, OnPoint has committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

a.    violations of Cal. Lab. Code § 1194 and IWC Wage Order 16-2001 pertaining to

payment of wages, including minimum wage, for all hours worked;

b. violations of Cal. Lab. Code § 510 and Wage Order 16-2001 pertaining to overtime;

c. violations of Cal. Lab. Code §§ 226.7 and 512 and Wage Order 16-2001 pertaining to meal and rest breaks;

d. violations of Cal. Lab. Code § 226 regarding accurate, timely itemized wage statements;

e. violations of Cal. Lab. Code § 2802 regarding indemnification for necessary business expenditures; and

f. violations of Cal. Lab. Code §§ 201-203.

130. The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

131. The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq*. Among other things, the acts and practices have taken from Plaintiff and the Class wages rightfully earned by them, while enabling Defendant to gain an unfair competitive advantage over law-abiding employers and competitors.

132. Cal. Bus. & Prof. Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendant from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

133. As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the California Class members have suffered a loss of money and property, in the form of unpaid wages, which are due and payable to them.

134. Cal. Bus. & Prof. Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

Plaintiff and the California Class are entitled to restitution pursuant to Cal. Bus. & Prof. Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint. Plaintiff's success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiff sues on behalf of herself as well as others similarly situated. Plaintiff and putative California Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

135.    Plaintiff herein takes upon herself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant to Cal. Code Civ. Proc. §1021.5 and otherwise.

136.    Wherefore, Plaintiff and the putative California Class request relief as hereinafter provided

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

a)    Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, Cal. Lab. Code, and Cal. Bus. & Prof. Code;

b)    For a declaratory judgment that OnPoint has violated the FLSA and California Labor Code and public policy as alleged herein;

c)    For a declaratory judgment that OnPoint has violated Cal. Bus. & Prof. Code §§ 17200, *et seq.*, as a result of the aforementioned violations of the Cal. Lab. Code and of California public policy protecting wages;

d)    For preliminary, permanent, and mandatory injunctive relief prohibiting OnPoint, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

e)    For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

f)    For an order awarding Plaintiff and the Class and Collective members compensatory

damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money, actual damages, punitive damages, and all other sums of money owed to Plaintiff and Class members, together with interest on these amounts, according to proof;

g)    For an order awarding Plaintiff and the Class and Collective members civil penalties pursuant to the FLSA and Cal. Lab. Code provisions cited herein, with interest thereon;

h)    For an award of reasonable attorneys' fees as provided by the Cal. Lab. Code; Cal. Code Civ. Proc. § 1021.5; the FLSA; and/or other applicable law;

i)    For all costs of suit;

j)    For interest on any damages and/or penalties awarded, as provided by applicable law; and

k)    For such other and further relief as this Court deems just and proper.

Dated: December 10, 2024                    Respectfully Submitted,

Carolyn Hunt Cottrell
Ori Edelstein
Michelle S. Lim
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**

*Attorneys for Plaintiff and the
Putative Class and Collective*

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Villafan v. OnPoint Industrial Services LLC*

1

**DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to

3    a jury.

4

5    Dated: December 10, 2024                    Respectfully Submitted,

6

7                                               _____

8                                               Carolyn Hunt Cottrell
                                                Ori Edelstein
                                                Michelle S. Lim
9                                               **SCHNEIDER WALLACE**
                                                **COTTRELL KONECKY LLP**

10

11                                              *Attorneys for Plaintiff and the*
                                                *Putative Class and Collective*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Villafan v. OnPoint Industrial Services LLC*